# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 5, 2009　　　　Decided November 20, 2009

No. 05-5420

RONALD MITCHELL,
APPELLANT

v.

FEDERAL BUREAU OF PRISONS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 05cv00512)

*Sara Kaiser*, Student Counsel, argued the cause as *amicus curiae* in support of appellant. With her on the briefs were *Steven H. Goldblatt*, appointed by the court, *Cecily Baskir* and *Charlotte Garden*, Supervisory Attorneys, and *James E. Burke*, *Tony Diab* and *Prashina Gagoomal*, Student Counsel.

*Ronald Mitchell*, pro se, filed briefs.

*Harry B. Roback*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: TATEL and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Challenging the conditions of his incarceration, and having been denied *in forma pauperis* (IFP) status by the district court, appellant now seeks to proceed IFP on appeal. Although appellant has only two "strikes" and thus faces no Prison Litigation Reform Act (PLRA) bar to IFP status, we find that he qualifies as an abusive filer under *Butler v. Department of Justice*, 492 F.3d 440 (D.C. Cir. 2007), in which we denied IFP status to a prisoner who, though not technicaly barred by the PLRA, had nonetheless abused the privilege. Also, even though we now recognize an exception under *Butler* for prisoners who face imminent danger of serious physical injury, appellant's allegations are insufficient to qualify for that exception. We therefore deny his motion for IFP status on appeal.

**I.**

Ronald Mitchell is a twice-convicted bank robber currently serving a fifteen-year sentence in the custody of the Bureau of Prisons (BOP). Over the course of his tenure in the prison system, he has been incarcerated in several different penitentiaries and has filed at least sixty-five unsuccessful lawsuits and appeals in the federal courts, virtually all of which challenged the legality of his conviction and the conditions of his confinement. This is one of those cases.

Proceeding under the Privacy Act, 5 U.S.C. § 552a, Mitchell filed a complaint in federal court in March 2005, alleging that his prison files omitted a required notation regarding his need for protective custody. He claimed that because of this omission, he was improperly transferred to

USP Florence, a high-security prison in Colorado—his first stay at a high-security facility. According to Mitchell, even though BOP knew he had testified for the government against his co-defendants and that USP Florence is "known for murders and assaults on . . . anyone who has been known as a snitch," it transferred him there so that he would be "murdered" by fellow prisoners. Compl. 3–4. In his request for relief, Mitchell also asserted that he "need[s] medical treatment for Hepatitis B & C which is incurable and administered to plaintiff at USP Florence." Compl. 8. He sought transfer to protective custody, medical treatment, and damages.

Mitchell filed a motion to proceed IFP in the district court. The district court, finding that Mitchell had three "strikes" within the meaning of the PLRA, 28 U.S.C. § 1915(g), denied the motion and later dismissed the complaint for failure to pay the filing fee.

Challenging the district court's denial of IFP status, Mitchell now seeks to proceed IFP on appeal. His appellate IFP motion has a long history in this court that we need not recount here. Suffice it to say that in January 2009, we appointed the Georgetown University Law Center Appellate Litigation Clinic as amicus curiae to support Mitchell's position.

## II.

The PLRA prohibits a prisoner who has accumulated three or more "strikes" from proceeding IFP in any civil action or appeal in federal court. 28 U.S.C. § 1915(g). A strike is a civil "action or appeal [brought] in a court of the United States" by the prisoner while incarcerated "that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.*

Amicus argues that Mitchell has only two strikes. BOP contends he has at least three.

Having thoroughly reviewed Mitchell's litigation history, we agree with amicus. Mitchell has two strikes, both complaints dismissed for failure to state a claim. *See Mitchell v. Dep't of Justice*, No. 1:06-cv-107 (N.D. W. Va. Nov. 11, 2006); *Mitchell v. Hawk-Sawyer*, No. 6:01-cv-3324 (W.D. Mo. July 19, 2001). None of the other sixty-three cases qualifies as a strike. They were either (1) dismissed or disposed of, at least in part, for reasons other than being "frivolous, malicious, or fail[ing] to state a claim upon which relief may be granted," *see Thompson v. Drug Enforcement Admin.*, 492 F.3d 428, 437 (D.C. Cir. 2007) (holding that the only cases that count as strikes are those identified in the statute), (2) habeas petitions, *see Blair-Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir. 1998) (holding that habeas cases are not strikes), or (3) appellate affirmances of district court dismissals rather than dismissals of appeals, *see Thompson*, 492 F.3d at 436 (holding that the PLRA "speaks only of dismissals, not affirmances"). Accordingly, the PLRA does not prohibit Mitchell from proceeding IFP.

This, however, does not end our analysis. The government argues that we should nonetheless deny Mitchell IFP status as a discretionary matter under *Butler*, where we held that courts have authority to deny IFP status to prisoners who abuse the privilege but who are not technically barred by the PLRA. 492 F.3d at 445.

> We believe the best solution to [the problem of abusive filers] lies in exercising our discretionary authority to deny IFP status to prisoners who have abused the privilege. Our ability to do so derives from both the PLRA

> itself, and our more general supervisory authority to manage our docket so as to promote[] the interests of justice.

*Id.* at 444–45 (alteration in original) (internal quotation marks and citation omitted). According to the government, the "number, frequency, content, and disposition" of Mitchell's sixty-five federal cases "reflect an unmistakable pattern of abuse." Appellee's Br. 24.

Amicus argues that in determining whether to invoke *Butler* we should consider only some of these sixty-five cases. Specifically, insisting that the *Butler* rule is designed to prevent abuse of *this* court's processes, amicus asks that we look only to the three cases Mitchell has filed in the D.C. Circuit. We disagree. In *Butler* itself we considered cases the prisoner had filed not just in this court, but also in our district court and in the District Court of Maryland. 492 F.3d at 446–47 & n.8 & 9; *see also Hurt v. Soc. Sec. Admin.*, 544 F.3d 308, 309 (D.C. Cir. 2008) (referring to cases filed in the district courts as part of the evidence of Hurt's litigation history). Even in *In re Sindram*, 498 U.S. 177 (1991), on which amicus relies, the Supreme Court denied IFP status in part because the petitioner had raised the same issue "in five different state and federal courts on 27 prior occasions." *Id.* at 179. Moreover, the PLRA itself directs courts to consider cases filed "in a court of the United States," 28 U.S.C. § 1915(g), and we see no reason to consider a smaller set of cases when exercising our *Butler* discretion. The point is this: we deny IFP status to prisoners who have abused the privilege, and it would make no sense to disregard evidence that a prisoner who has yet to abuse the privilege here has blatantly abused it elsewhere.

Offering a second reason for considering fewer than all sixty-five cases, amicus points out that during the proceedings leading up to this appeal, the government had identified only twelve cases, but that in its appellate brief it listed a total of sixty-three (not including the district court or appellate stages of the instant case). According to amicus, because the government had "multiple opportunities to identify the cases on which it wishes to rely," we should limit our evaluation of Mitchell's IFP eligibility to the twelve previously identified cases. Amicus Curiae Reply Br. 6. Again, we disagree. Evaluating a prisoner's entitlement to IFP status is not a traditional adversarial proceeding where we serve as an "arbiter[] of legal questions presented and argued by the parties" and decline to consider arguments raised too late in order to prevent unfairness. *McBride v. Merrell Dow & Pharma., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) (internal quotation marks omitted). Rather, *Butler* calls on us to exercise our discretion to protect the federal courts from abusive filers, and proper exercise of that discretion requires that we act on the basis of as much information as we can obtain. Indeed, amicus could hardly object if we had uncovered the additional cases ourselves, as often happens in IFP proceedings.

At oral argument, amicus conceded that if we consider all sixty-five cases, Mitchell qualifies under *Butler* as an abusive filer. This time we agree. In determining whether to exercise our *Butler* discretion, we consider the "number, content, frequency, and disposition of the petitioner's previous filings." *Butler*, 492 F.3d at 445. Mitchell has filed sixty-five cases over fifteen years. All sought the same relief, and all were unsuccessful. Mitchell's record is comparable to those of others whose IFP status we have denied. *See, e.g.*, *Hurt*, 544 F.3d at 309 (identifying "more than seventy appeals" in two years, all unsuccessful and many frivolous, such as one

against the Declaration of Independence). Indeed, Mitchell's record—sixty-five cases over fifteen years—is even worse than Butler's, who in eight years had filed twenty-five unsuccessful cases raising the same legal issue. *Butler*, 492 F.3d at 446.

Again, however, this does not end our task. Amicus urges us to recognize an exception under *Butler* for prisoners facing an imminent danger of serious physical injury and to find that Mitchell qualifies for it. The government has no objection to such an exception, but insists that Mitchell fails to make the cut.

For several reasons, we agree with the parties that we should recognize an endangerment exception under *Butler*. For one thing, it would comport with the considered policy judgment of Congress as expressed in the PLRA, which contains an exception to the three-strikes rule for prisoners who face "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). As the Supreme Court has instructed, absent countervailing arguments, "courts can, and indeed should, be guided by the federal policies reflected in congressional enactments." *Heck v. Humphrey*, 512 U.S. 477, 488 n.9 (1994). Adopting an endangerment exception to *Butler* that mirrors the PLRA's also creates a uniform IFP policy in this circuit, and the Supreme Court has recently emphasized the value of such uniformity. *Kansas v. Colorado*, 129 S. Ct. 1294, 1298 (2009) (crafting a discretionary rule by mirroring a statutory rule applicable in similar cases because "the best approach is to have a uniform rule that applies in all federal cases"). Finally, although IFP status may be constitutionally denied to prisoners who have abused the privilege, *see Tucker v. Branker*, 142 F.3d 1294, 1299 (D.C. Cir. 1998), recognizing an imminent danger exception eases any constitutional tension that might result

from denying access to the courts to prisoners facing life-threatening conditions.

This, then, brings us to the final question: Does Mitchell qualify under the imminent danger exception? As with the PLRA, we assess the alleged danger at the time Mitchell filed his complaint and thus look only to the documents attesting to the facts at that time, namely his complaint and the accompanying motion for IFP status. *See Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006) ("In determining whether [the petitioner] qualifies [for the imminent danger exception], we look to the complaint . . . ."). We construe his complaint liberally and accept its allegations as true. *Id.* In so doing, we reject the government's argument that we should instead subject Mitchell's allegations to the pleading standard the Supreme Court set forth earlier this year in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). There, the Court held that "a complaint must contain sufficient factual matter," alleged in non-conclusory terms, "to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal quotation marks omitted). This standard, however, has no applicability to IFP proceedings where we are exercising our discretion to grant or withold a privilege made available by the courts. *See supra* at 6. IFP proceedings are nonadversarial and implicate none of the discovery concerns lying at the heart of *Iqbal*. *See* 129 S. Ct. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Of course, if IFP status is granted, defendants remain free to rely on *Iqbal* in support of a motion to dismiss the underlying complaint. But when considering IFP eligibility, we shall continue using the traditional standards applicable to pleadings by pro se prisoners.

Amicus contends that Mitchell's complaint and IFP motion present two types of imminent danger. First, Mitchell alleged that even though BOP knew he had testified for the government, it illegally transferred him to USP Florence, a prison known for "murders and assaults on . . . anyone who has been known as a snitch," and where he was nearly murdered in October 2003. Compl. 3. Although we disagree with the government that these allegations are insufficiently specific, we do agree that Mitchell has failed to allege that the danger he faces is imminent. Not only did Mitchell wait until seventeen months after the alleged attack to file his complaint, but neither the complaint nor his IFP motion alleges any ongoing threat. *Cf. Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) (finding imminent danger where the inmate alleged that prison officials knowingly placed him near those who are likely to attack him because the complaint alleged an ongoing pattern of such placements and was filed "very shortly after the last attack").

Mitchell's second imminent danger claim rests on his allegations regarding untreated hepatitis. Specifically, he alleged that he "need[s] medical treatment for Hepatitis B & C which is incurable and administered to plaintiff at USP Florence." Compl. 8. In his IFP motion, he claimed that he faces imminent danger because he "needs medical treatment for critical impairments." Mot. for IFP 2. According to the government, these allegations fall short because (1) they have no connection to his Privacy Act claim, *see Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (denying the prisoner's IFP motion because the complaint "does not seek any relief specifically related to the abusive conditions" of which he complained), and (2) they are insufficiently specific to establish an imminent danger to health. We have no need to address the government's first point because we agree with its second.

Although we have held that "failure to provide adequate treatment for Hepatitis C, a chronic and potentially fatal disease, constitutes 'imminent danger,'" *see Ibrahim*, 463 F.3d at 6–7, the prisoner's factual allegations must be sufficiently specific for us to infer that the prisoner has a serious disease and that prison officials have failed to treat it. Absent such allegations, we have no basis for evaluating the imminence or dangerousness of the threat the prisoner faces. Moreover, unless we require prisoners to demonstrate the actual existence of an imminent threat, otherwise disqualified filers could obtain IFP status simply by adding general allegations of endangerment. As the Third Circuit, sitting en banc, explained in the context of the PLRA's endangerment exception, "any time that an otherwise disqualified prisoner alleges that any threat of physical injury occurred at any time, that prisoner [would] automatically qualif[y] for the imminent danger exception. [This] interpretation of the . . . exception thereby swallows the rule. . . . [W]e refuse to conclude that with one hand Congress intended to enact a statutory rule . . . but, with the other hand, it engrafted an open-ended exception that would eviscerate the rule." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) (en banc).

The government points to several cases where the allegations were sufficiently specific to qualify for the endangerment exception. In *Ibrahim*, we found an imminent danger where the prisoner described in detail the denial of particular medical treatment by named persons on specific dates. Complaint for Damages at 2–18, *Ibrahim*, 463 F.3d 3. Similarly, the Ninth Circuit found imminent danger where the complaint "recounted in detail" the threat posed by the prison's policy of failing to screen inmates for communicable diseases. *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007). And the Eleventh Circuit found imminent danger where the prisoner sued the facility's medical officials and

described treatment that a doctor had prescribed but that prison officials denied. Complaint Under the Civil Rights Act at 1, 6–7, *Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004).

By contrast, Mitchell's allegations are vague and unspecific. He says he "need[s] medical treatment," but he never tells us when he asked for assistance, what kind of treatment he requested, who he asked, or who denied it. Indeed, he never even clearly states that medical attention was actually denied. Had Mitchell alleged any of these facts, we might treat his motion differently. Absent such allegations, however, and even viewing his complaint through the forgiving lens applicable to pro se pleadings, we simply cannot determine whether Mitchell faces an imminent danger. Given this, and given the need to ensure that the endangerment "exception [does not] swallow the rule," we conclude that Mitchell's allegations are insufficient.

## III.

For the foregoing reasons, we deny the motion for IFP status on appeal. If Mitchell wishes to proceed, he has thirty days from the date of this opinion to pay the filing fee.

*So ordered.*