TATEL, Circuit Judge,
concurring:
Having written the court’s opinion, I obviously agree that we have no need to assess the constitutionality of the Prison Litigation Reform Act’s “three-strikes” provision. But because at our direction court-appointed amicus and the government have fully briefed that issue, and because this court, though regularly applying the three-strikes provision, has yet to fully examine its constitutionality, I write separately to explain my own doubts on that question.
A bit of background is in order. When Congress enacted the Prison Litigation Reform Act (PLRA) in 1996, it vastly changed the scope of in forma pauperis (IFP) status for both state and federal prisoners seeking to bring claims in federal court. Pursuant to section 1915(b), prisoners granted leave to proceed IFP are, unlike non-prisoner IFP litigants, still generally required to pay filing fees. The statute, however, allows them to pay the fees in installments over time—potentially over a very long period of time. See 28 U.S.C. § 1915(b)(1)-(2). And for prisoners unable to pay even these partial installments, the statute includes a “safety valve” provision: “In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial fee.” Id. § 1915(b)(4).
The PLRA’s three-strikes provision, section 1915(g), imposes more onerous burdens on those prisoners who have “on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it *905 is frivolous, malicious, or fails to state a claim upon which relief may be granted.” Id. § 1915(g). Unless such prisoners file a habeas petition attacking the fact or duration of their confinement — which is not a “civil action” to which the PLRA applies, see Blair-Bey v. Quick, 151 F.3d 1036, 1039-42 (D.C.Cir.1998)—or allege that they are in “imminent danger of serious physical injury,” they are denied IFP status altogether. 28 U.S.C. § 1915(g). The statute contains no safety valve for such prisoners.
The three-strikes provision implicates two interrelated lines of constitutional decisions. In the first, the Supreme Court has held that filing and similar fees must be waived for indigent litigants who raise certain types of claims. In the foundational case of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), a four-justice plurality held that a state violated both due process and equal protection by requiring indigent convicted defendants to pay a fee for the transcripts needed to appeal their convictions. See id. at 15, 18-19, 76 S.Ct. 585 (plurality opinion). Because criminal defendants have no constitutional right to appeal their convictions in the first place, the decision appears to have been grounded primarily in equal protection principles: if a state affords some defendants a right to appeal it must afford all defendants that same right. See M.L.B. v. S.L.J., 519 U.S. 102, 111, 120, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (“ ‘[M]ost decisions in this area,’ we have recognized, ‘rest on an equal protection framework,’ ... for ... due process does not independently require that the State provide a right to appeal.”) (internal citations and alterations omitted) (quoting Bearden v. Georgia, 461 U.S. 660, 665, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)); see also Griffin, 351 U.S. at 21-23, 76 S.Ct. 585 (Frankfurter, J., concurring in the judgment) (relying principally on the Equal Protection Clause). The Court has since extended these same principles to habeas petitions, see Smith v. Bennett, 365 U.S. 708, 709, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961) (“to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws”), as well as to litigation involving certain fundamental interests, such as obtaining a divorce, see Boddie v. Connecticut, 401 U.S. 371, 374, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), or appealing the termination of parental rights, see M.L.B., 519 U.S. at 123, 117 S.Ct. 555. But the Court has declined to hold that the Constitution requires the waiver of fees when indigent litigants seek to vindicate less fundamental interests, such as securing a discharge in bankruptcy, see United States v. Kras, 409 U.S. 434, 445-46, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), or appealing a denial of welfare benefits, see Ortwein v. Schwab, 410 U.S. 656, 659-60, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (per curiam).
In the second line of cases, the Court has addressed the rights of prisoners to access the courts. Griffin and Smith— which, again, struck down fees imposed on defendants challenging their convictions on direct appeal and habeas, respectively-are among the decisions that first established this right of access. See Lewis v. Casey, 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). But fees are hardly the only barriers that stand between prisoners and the courts, and the Supreme Court has held that the right of access also includes the right to “adequate law libraries or adequate assistance from persons trained in the law.” Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Court has also made clear that prisoners’ right of access extends beyond litigation attacking their convictions and sentences. In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 *906 (1974), the Court, perceiving in this regard “no reasonable distinction between” habeas and civil rights actions, id. at 580, 94 S.Ct. 2963, held that the right encompasses prisoner litigation seeking to vindicate “basic constitutional rights,” id. at 579, 94 S.Ct. 2963. Thus, although the Constitution “does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims,” it does require that inmates be provided “[t]he tools” they “need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.” Lewis, 518 U.S. at 355, 116 S.Ct. 2174. Moreover, to trigger the right of access, these claims must qualify as non-frivolous. See id. at 352 n. 2, 353 n. 3, 116 S.Ct. 2174.
This court applied these constitutional principles in In re Green, 669 F.2d 779 (D.C.Cir.1981), a case involving an indigent prisoner categorically denied IFP status. The plaintiff in Green had filed an incredible number of frivolous lawsuits, apparently trying to “deliberately flood[ ] the courts with his complaints and petitions ... in a vain attempt to gain his release from prison.” Id. at 782. The district court responded by issuing an order providing that the prisoner could file an action in this district only if he first paid all filing fees upfront and made a deposit of $100 as security for costs. Id. at 784. We vacated this order for two separate and independent reasons. First, in prospectively denying IFP status in all future cases, the order violated section 1915(a) of the IFP statute, which; we held, required that a district court exercise its discretion to determine whether to grant leave to proceed IFP in each case. Id. at 786. Second, and of more relevance here, we held that the order violated Green’s right of “meaningful access to the courts” because it “erect[ed] a potentially prohibitive financial barrier that encompasses all civil suits including habeas corpus petitions as well as those involving a fundamental constitutional right.” Id. We explained: “because Green cannot comply with the court’s order if he is without the necessary funds, the order effectively denies Green any and all access to the district court.” Id. And because “[e]ven a new, nonfrivolous claim submitted in good faith would not be heard if Green could not meet the filing fee and cash deposit,” the district court’s order was unconstitutional. Id.
Of course, nowhere in Green did we hold that any requirement that a prisoner pay filing fees will necessarily be unconstitutional. Indeed, in Tucker v. Branker, 142 F.3d 1294 (D.C.Cir.1998), we distinguished Green and upheld the constitutionality of those PLRA provisions that require non-three-strikes prisoners to generally pay some filing fees. Characterizing Green as a case with “extreme” facts, we explained that the fees the PLRA imposes on IFP prisoners are “much less burdensome.” Id. at 1299. In particular, we emphasized that because the statute allows payment by installments, the required fees “never exact[ ] more than 20% of an indigent prisoner’s assets or income.” Id. at 1298. And given the safety valve provision, “even a destitute prisoner may file his suit if he wants to, without having to pay any initial fee.” Id. at 1297-98.
I struggle to see how we could similarly distinguish Green in a case in which an indigent prisoner challenges the PLRA’s three-strikes provision. The conditions the three-strikes provision imposes mirror the “extreme” facts of the order struck down in Green. Like the order in Green, not only does the three-strikes provision require prisoners to pay all filing fees upfront, but it applies even to claims involving fundamental constitutional rights. If prisoners have no ability to pay these fees, *907 then, as in Green, they face a “total barrier” to bringing their claims — again, three-strikers enjoy no statutory safety valve. Green, 669 F.2d at 785. The financial conditions at issue in Green differ from those imposed by the three-strikes provision in only one respect: the Green petitioner was also required to pay a $100 deposit. This difference, however, is constitutionally insignificant. Green was deprived of his right to meaningful access to the courts not because of the additional $100 deposit, but simply because “if he [was] without the necessary funds,” whatever that sum might be, he would be completely unable to file a claim. Id. at 786. The same is true of prisoners subject to the PLRA’s three-strikes provision.
The government attempts to distinguish Green in several ways. First, it points out that “Green predates the passage of the PLRA by approximately fifteen years.” Appellees’ Br. 43. But clearly, the fact that a statute postdates a constitutional decision cannot somehow render that statute constitutional. Otherwise, freedom of choice might have been constitutional just because it emerged following Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). But see Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).
The government further contends that the three-strikes provision, unlike the In re Green order, “only blocks access to the court ... without prepayment of fees for claims not brought by prisoners in imminent danger of serious bodily injury.” Appellees’ Br. 43. To be sure, the three-strikes provision’s imminent danger exception may permit prisoners to bring some of the claims they have a constitutional right to bring. But what about prisoners advancing constitutional claims that involve no imminent danger of serious bodily injury, such as free speech, religious liberty, or right to refuse medical treatment claims? The right to meaningful access to the courts extends as well to these sorts of claims that seek to vindicate “fundamental constitutional rights.” Lewis, 518 U.S. at 351, 116 S.Ct. 2174 (internal quotation marks omitted); Wolff, 418 U.S. at 579, 94 S.Ct. 2963. The fatal flaw in the Green order was that it would have prevented the prisoner from filing claims that he had a constitutional right to access the courts in order to file. See Green, 669 F.2d at 786. The three-strikes provision suffers from the very same deficiency.
The government also repeatedly asserts that IFP status is a “privilege” and not a “right.” E.g., Appellees’ Br. 25. As support for this proposition, it relies primarily on In re Sindram, 498 U.S. 177, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991). In that case, the Supreme Court, reasoning that it has “a duty to deny in forma pauperis status to those individuals who have abused the system,” ordered that an especially abusive litigant be denied IFP status in “all future petitions for extraordinary relief.” Id. at 180, 111 S.Ct. 596. As we have since held, Sindram and cases like it overruled Green’s statutory holding that section 1915(a) prohibits a court from imposing “prospective denials of IFP status.” Hurt v. SSA, 544 F.3d 308, 310 (D.C.Cir.2008). But the Supreme Court’s order in Sin-dram, like other orders the Court imposed in similar cases, see In re Anderson, 511 U.S. 364, 365, 114 S.Ct. 1606, 128 L.Ed.2d 332 (1994), was limited, applying only to requests for extraordinary relief from the Court itself, thus closing just one of the litigant’s potential avenues of access to that or any court. Sindram therefore has little bearing on Green’s separate constitutional holding, which remains binding in this Circuit. See Aamer v. Obama, 742 F.3d 1023, 1033 (D.C.Cir.2014) (“[Alternative grounds for a decision are nonetheless precedential.”). The same goes for our *908 own decisions denying litigants leave to proceed IFP in circumstances that did not require us to consider whether denial would prevent a prisoner from raising a nonfrivolous constitutional claim. See Mitchell v. Federal Bureau of Prisons, 587 F.3d 415, 417 (D.C.Cir.2009) (denying application to proceed IFP of prisoner who complained of improper notation in administrative files and made vague claims regarding need for medical treatment); Hurt, 544 F.3d at 310 (prospectively denying “non-inearcerated litigant[]” privilege of proceeding IFP); Butler v. U.S. Department of Justice, 492 F.3d 440, 445-47 (D.C.Cir.2007) (denying prisoner leave to proceed IFP in advancing a Freedom of Information Act claim). Thus, although IFP status may well be a “privilege” for most litigants raising most types of claims, the Supreme Court has unequivocally held that waiver of filing fees is in some cases constitutionally required, see, e.g., Smith, 365 U.S. at 712, 81 S.Ct. 895; Griffin, 351 U.S. at 18-19, 76 S.Ct. 585, and our decision in Green makes clear that prisoners have a right to a reduction in fees if necessary to enable them to vindicate fundamental constitutional rights, see Green, 669 F.2d at 786.
Consistent with the foregoing, several Courts of Appeals have left open the possibility that a prisoner might bring a successful as-applied challenge to the PLRA’s three-strikes provision. For example, although the Eleventh Circuit rejected a claim that the three-strikes provision impeded the right to access the courts, it did so only after observing that the plaintiffs “well-pled allegations ... plainly advance no cognizable fundamental interest.” Rivera v. Allin, 144 F.3d 719, 724 (11th Cir. 1998). Likewise, the Ninth Circuit held that “where a fundamental right is not at stake, § 1915(g) does not infringe upon an inmate’s meaningful access to the courts.” Rodriguez v. Cook, 169 F.3d 1176, 1180 (9th Cir.1999) (emphasis added); accord White v. State of Colorado, 157 F.3d 1226, 1233-34 (10th Cir.1998); Carson v. Johnson, 112 F.3d 818, 821 (5th Cir.1997).
To be sure, other Circuits have held as a categorical matter that the three-strikes provision does not infringe prisoners’ right of access to the courts. These decisions rest on two primary rationales, both of which are foreclosed in this Circuit by Green and are in any event unconvincing.
First, some courts have reasoned that a three-strikes litigant may simply find a way to pay the required fees. As the Seventh Circuit put it, prisoners may pay “using assets on hand,” “[s]ave up in advance,” “[b]orrow the filing fee from friends or relatives,” or “[b]orrow the filing fee from a lawyer.” Lewis v. Sullivan, 279 F.3d 526, 530 (7th Cir.2002); accord Higgins v. Carpenter, 258 F.3d 797, 800 (8th Cir.2001). These ways of cobbling together filing fees were, however, presumably equally available to the petitioner in Green, and we nonetheless held that the financial burden imposed by the district court’s order — again, essentially the same as that imposed by the three-strikes provision — effectively deprived him of access to the courts. See Green, 669 F.2d at 786. In so doing, we adhered to the logic the Supreme Court has applied in holding that even minimal fees must sometimes be waived, logic that I believe better reflects the reality prisoners face. As the Court explained in Smith, “While $4 is, as the State says, an ‘extremely nominal’ sum, if one does not have it and is unable to get it the fee might as well be $400.” 365 U.S. at 712, 81 S.Ct. 895.
Second, other courts have held that the three-strikes provision does not deny indigent prisoners access to the courts because such prisoners may simply “[s]ue in state rather than federal court.” Lewis, 279 F.3d at 530; accord Abdul-Akbar v. McKelvie, 239 F.3d 307, 318 (3rd Cir.2001) *909 (en banc); Wilson v. Yaklich, 148 F.3d 596, 605 (6th Cir.1998). But prisoners may be unable to bring some claims in state court. See Richard S. Arnold, The Power of State Courts to Enjoin Federal Officers, 73 Yale L.J. 1385 (1964) (discussing limits on state courts’ ability to entertain claims against federal officials). And in any event, the plaintiff in Green was also capable of filing claims in state court, as he in fact had. See Green, 669 F.2d at 781. Although we never said so expressly, our conclusion that the Green petitioner had been deprived of his right to meaningful access likely reflected, in part, our application of the equal protection principles that underlie that right: Green was entitled to litigate his claims in this court because other litigants may do so. Such reasoning would echo the Supreme Court’s rejection of the argument that a state could impose filing fees on indigent habeas petitioners because they could simply seek the writ in a federal court. “But even though this be true,” the Court declared,' “it would ill-behoove this great State [ (Iowa) ], whose devotion to the equality of rights is indelibly stamped upon its history, to say to its indigent prisoners seeking to redress what they believe to be the State’s wrongs: ‘Go to the federal court.’ ” Smith, 365 U.S. at 713, 81 S.Ct. 895.
For these reasons, I have grave doubts that the PLRA’s three-strikes provision may be constitutionally applied to indigent prisoners who seek access to the courts in order to bring claims involving fundamental constitutional rights. In the appropriate case, this court should address this unsettled issue. In so suggesting, I fully understand that Congress was responding to a very real problem when it enacted the PLRA. It is undoubtedly true that much prisoner litigation is not only frivolous and abusive, but also imposes substantial costs on the federal courts. That said, it is also undoubtedly true that some prisoners have legitimate constitutional claims. See, e.g., Brown v. Plata, — U.S.-, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011) (upholding order requiring California to reduce prison overcrowding that had produced pervasive constitutional violations). So while faithfully honoring Congress’s goal of reducing abusive litigation, the federal courts remain constitutionally obligated to hear such claims, for “[ojnly by zealously guarding the rights of the most humble, the most unorthodox and the most despised among us can freedom flourish and endure in our land.” Bridges v. Wixon, 326 U.S. 135, 166, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945).