# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 8, 2015          Decided August 7, 2015

No. 13-5362

BILLY G. ASEMANI,
APPELLANT

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,
USCIS, A BRANCH OF THE U.S. DEPARTMENT OF HOMELAND
SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-02268)

*Kwaku A. Akowuah*, appointed by the court, argued the cause for appellant. With him on the briefs were *Jeffrey T. Green* and *Tobias S. Loss-Eaton*, appointed by the court.

*Wynne P. Kelly*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS, TATEL and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*:  Billy G. Asemani is an inmate in the Western Correctional Institution in Cumberland, Maryland.  After United States Citizenship and Immigration Services (USCIS) denied Asemani's application for naturalization, he filed a mandamus petition seeking to compel the agency to grant him a hearing to review the denial.  Asemani initially obtained leave from the district court to pursue his petition *in forma pauperis* (IFP).  But the court subsequently concluded that Asemani could not proceed IFP because of the so-called "three-strikes rule" set out in the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(g), which bars certain prisoners from proceeding IFP if three or more prior suits have been dismissed on specified grounds.  Asemani now brings this appeal, arguing that he qualifies for IFP status under the imminent danger exception to the three-strikes rule, or, alternatively, that the three-strikes rule is unconstitutional as applied to his case.  We reject his arguments and therefore deny his request to proceed IFP on appeal.

I.

A.

Congress enacted the PLRA in response to concern that prisoners were "flooding the courts with meritless claims." *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1356 (D.C. Cir. 1998).  The PLRA substantially altered the availability of IFP status with respect to prisoner suits.  *See Tucker v. Branker*, 142 F.3d 1294, 1296-97 (D.C. Cir. 1998).

Under the PLRA, all prisoner-litigants must pay filing fees in full.  A prisoner who qualifies for IFP status, however, need not pay the full filing fee at the time he brings suit.  28 U.S.C. § 1915(a)(1).  Rather, he can pay the filing fee in

installments over time. *Id.* § 1915(b). But the PLRA bars certain prisoners from proceeding IFP under the three-strikes rule contained in § 1915(g), which reads:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The three-strikes rule thus requires a prisoner who otherwise qualifies for IFP status to pay the full filing fee at the time of filing suit rather than in installments. *See generally Coleman v. Tollefson*, 135 S. Ct. 1759, 1761-62 (2015).

As the text of the provision indicates, § 1915(g) also contains an exception to the exception: even if a prisoner has three strikes, he may proceed IFP—*i.e.*, he may pay the filing fee in installments—if he is "under imminent danger of serious physical injury." That exception "eases any constitutional tension that might result from denying access to the courts to prisoners facing life-threatening conditions." *Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 420 (D.C. Cir. 2009).

## B.

Asemani is currently serving a thirty-year sentence in the Western Correctional Institution in Cumberland, Maryland.

While incarcerated, at least three of his suits have been dismissed on grounds qualifying as "strikes" for purposes of the three-strikes rule.  On December 21, 2011, Asemani filed a petition for a writ of mandamus in the district court.  His petition seeks an order compelling USCIS to act upon his request for a hearing concerning the denial of his application for naturalization.  He filed a motion to proceed IFP the same day.  On February 14, 2012, the district court granted that motion.

On August 10, 2012, the government, citing the three-strikes rule, moved to vacate the order granting Asemani IFP status.  In response, Asemani conceded that he has three strikes but argued that he nonetheless qualifies for IFP status under the imminent danger exception.  He explained that he had suffered "two back-to-back acts of assaults" by other inmates while in prison.  App. 40.  As a result of those assaults, Asemani had been placed in protective custody, which "requires his placement in a segregated housing unit." *Id.*  At the time of Asemani's response to the government's motion to vacate IFP status, he had been in protective custody for "nearly a year," *id.*, and anticipated remaining in protective custody for the "indefinite" future, *id.* at 41.  Even while in protective custody, he claimed that he faces a "constant threat of violence because of the maximum security nature" of his fellow inmates.  *Id.*

The district court granted the government's motion and revoked Asemani's IFP status, ordering him to pay the full $350 filing fee within thirty days or face dismissal of his case.  Asemani failed to pay the filing fee and his case was dismissed.  Asemani now appeals the district court's order vacating IFP status and its order dismissing his case.  Asemani also seeks leave to proceed IFP on appeal.

We appointed counsel to argue as amicus curiae in favor of his position. In lieu of filing his own briefing in this appeal, Asemani asks us to "construe [amicus's] filings as being his position." Pro Se Appellant's Mot. For Waiver of His Obligation to File "Appellant Br." 3. Accordingly, we attribute amicus's arguments to Asemani.

II.

As has been our practice in cases arising in the same posture, we first consider Asemani's request to proceed IFP on appeal. *See Smith v. District of Columbia*, 182 F.3d 25, 27 (D.C. Cir. 1999). The PLRA's three-strikes rule applies with equal force to "a prisoner bring[ing] a[n] . . . appeal," so Asemani cannot proceed IFP unless he demonstrates that he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The government argues that Asemani should not be allowed to proceed IFP on appeal "for the same reasons the district court revoked the privilege below." Appellee Br. 45. The court concluded that, for two independent reasons, Asemani failed to establish eligibility for the imminent danger exception. First, the court held that Asemani's allegations of imminent danger were untimely and could not be considered. Second, the court determined that, even if it could consider Asemani's allegations, he fails to qualify for the imminent danger exception because the danger he alleges is unrelated to his underlying mandamus claim.

As to the government's timeliness argument, the parties both assume that the timeliness of Asemani's allegations before the district court necessarily determines whether those allegations are timely for purposes of IFP status on appeal. Even assuming that is true, we conclude that Asemani's allegations of imminent danger were timely before the district court. As to the district court's second ground for denying

IFP status, this court has not resolved whether § 1915(g) requires that there be some nexus between the imminent danger alleged and the prisoner's underlying claim. *See Mitchell*, 587 F.3d at 421. We do not resolve that issue in this case. Instead, we conclude that Asemani is barred from proceeding IFP on appeal because his allegations fail to make out the requisite imminent danger.

## A.

Asemani's allegations of imminent danger first appeared in his pro se opposition to the government's motion to revoke his IFP status. The district court concluded that those allegations could not be considered. Asemani, the court held, was required to include those allegations in his complaint or in his motion for IFP status. The government, agreeing with the district court, argues that we therefore should decline to consider Asemani's allegations of imminent danger. We are unconvinced.

It is well established that a prisoner seeking to proceed IFP need not affirmatively plead compliance with § 1915(g)'s three-strikes rule. The PLRA sets forth numerous pleading requirements for prisoners seeking IFP status, s*ee, e.g.*, 28 U.S.C. § 1915(a)(1)-(2), and compliance with § 1915(g) is not among them. "[H]ad Congress intended to require prisoners to affirmatively show that they were not subject to the three-strikes provision, it would have included that requirement in the list of requirements prisoners must address in order to obtain IFP status." *Thompson v. DEA*, 492 F.3d 428, 434 (D.C. Cir. 2007) (internal quotation marks and ellipses omitted). If a prisoner is not required preemptively to negate the three-strikes rule in a motion for IFP status, it makes little sense to think he nevertheless would need preemptively to present facts establishing an exception to that rule.

Our precedent does not suggest otherwise. To be sure, we have held that § 1915(g) places certain temporal constraints on the facts that may be considered in evaluating whether a prisoner faces imminent danger. The text of the PLRA dictates that a prisoner with three strikes cannot seek IFP status to "*bring* a civil action . . . unless the prisoner *is* under imminent danger of serious physical injury." 28 U.S.C. § 1915(g) (emphasis added). Section 1915(g)'s use of the present tense and its concern with the initial step of bringing the action indicates that the exception applies only if the danger existed at the time the prisoner filed his complaint. *Pinson v. Samuels*, 761 F.3d 1, 5 (D.C. Cir. 2014); *see Andrews v. Cervantes*, 493 F.3d 1047, 1052-53 (9th Cir. 2007). In other words, the availability of the imminent danger exception turns on "whether the prisoner 'is under imminent danger of serious physical injury' when he 'bring[s]' his action," not "whether he later in fact suffers" (or earlier suffered) such a threat. *Pinson*, 761 F.3d at 5 (quoting 28 U.S.C. § 1915(g)).

We have never held, though, that a prisoner's allegations about the conditions he faces at the time "he 'bring[s]' his action," *id.*, must be made in any particular type of filing. While certain of our decisions have described a prisoner's allegations by reference to the specific document in which he happened to have made those allegations, that language was merely descriptive, not prescriptive. In *Pinson v. Samuels*, for example, we held that the imminent danger inquiry turns on "the alleged danger at the time [the prisoner] filed his complaint," and thus we looked "only to the documents attesting to the facts at that time, namely his complaint and the accompanying motion for IFP status." *Id.* (first alteration in original). While it is descriptively true that the only "documents attesting to the facts" at the time Pinson filed his complaint were the "complaint and the accompanying motion

for IFP status," the operative question under § 1915(g) is always whether *some* timely filing avers facts suggesting a prisoner was "under imminent danger of serious physical injury" at the time he "br[ought]" his complaint. 28 U.S.C. § 1915(g). Here, Asemani's response to the government's motion to vacate IFP status "attest[ed] to the facts" in existence at the time he filed this action. *Pinson*, 761 F.3d at 5. We therefore conclude that those allegations were timely before the district court.

B.

We must determine whether the facts alleged by Asemani demonstrate that he faced "imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see Pinson*, 761 F.3d at 4. The parties, relying on our approach in prior decisions, *see Pinson*, 761 F.3d at 4-5; *Mitchell*, 587 F.3d at 420, assume that the conditions faced by a prisoner when initially filing suit in the district court determine the applicability of the imminent danger exception on appeal. Whether the relevant conditions are those at the time of bringing the action in district court or instead those at the time of bringing the appeal, the distinction makes no difference in this case. Nothing in the record suggests that Asemani's conditions have changed in any way between the time he filed his complaint and the time he filed this appeal. We therefore assess whether he qualifies for the imminent danger exception on appeal based on the allegations he submitted to the district court when seeking to proceed IFP below. In conducting that inquiry, we accept his factual allegations as true. *Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006).

According to those allegations, at the time Asemani filed this action, he was "housed under protective custody status." App. 40. Protective custody status "requires his placement in

a segregated housing unit." *Id.* Asemani's placement in protective custody, he explains, came about because of "two back-to-back acts of assaults on him by other inmates." *Id.* Those assaults apparently occurred because "Asemani has many inmate enemies" in prison. *Id.* at 41. Asemani further claims that, even under protective custody, he is "faced with a constant threat of violence because of the maximum security nature of the other inmates[,] . . . many of whom are serving life sentences." *Id.*

Those allegations, we conclude, are materially indistinguishable from allegations this court has previously deemed insufficient to establish "imminent danger." In *Mitchell v. Federal Bureau of Prisons*, the prisoner alleged that, "even though BOP knew he had testified for the government, it illegally transferred him" to "a prison known for murders and assaults on . . . anyone who has been known as a snitch, and where he was nearly murdered in October 2003." 587 F.3d at 420-21 (internal quotation marks omitted). We found Mitchell's allegations inadequate to demonstrate "that the danger he face[d] [wa]s imminent." *Id.* at 421. Even though Mitchell alleged that he had suffered a violent assault in the past, that assault took place seventeen months before he filed his action. That the prison was generally dangerous and was "known for murder and assaults" on known "snitches" like Mitchell, we determined, was also insufficient to demonstrate that he faced an ongoing threat of imminent danger. *Id.* at 420-21.

We reached the same conclusion in *Pinson*. Pinson claimed that, "as a homosexual and former gang member, his designation to [a special unit of the prison] alongside members of rival gangs placed him in imminent danger of death or serious bodily injury." *Pinson*, 761 F.3d at 5. We held that Pinson's allegations of danger, like those in

*Mitchell*, failed to demonstrate that the danger he faced was imminent. *Id.* We therefore denied Pinson's motion for IFP status on appeal. *Id.* at 5-6.

The facts alleged by Asemani are materially indistinguishable from those presented in *Mitchell* and *Pinson*. While Asemani alleges that he suffered two beatings in the past, he also alleges that, as a result of those beatings, he was moved into protective custody. The beatings, which took place while Asemani was in the general prison population, do not indicate that Asemani continued to face imminent danger at the time he filed his complaint—*i.e.*, after he had been moved into protective custody. And he makes no allegation that he has suffered any beatings or received specific threats while in protective custody. Rather, he alleges a generic "threat of violence" due to the "maximum security nature of other inmates" housed in the prison population. App. 41.

Asemani also alleges that he might face added danger—perhaps even in protective custody—because he has "inmate enemies." *Id.* But that allegation is no stronger than the ones we deemed insufficient in *Pinson* and *Mitchell*: Mitchell and Pinson effectively alleged that they had "enemies" in prison due to certain characteristics they possessed. Just as in *Pinson* and *Mitchell*, Asemani's allegations with respect to the danger he faced in protective custody are insufficient for us to conclude he faces an imminent danger.

Asemani's allegations, moreover, fall considerably short of the circumstances courts have deemed adequate to demonstrate "imminent danger." The Ninth Circuit, for example, recently held that an inmate established imminent danger when she alleged that she had been "receiving constant, daily threats of irreparable harm, injury and death"

due to rumors allegedly started by prison officials. *Williams v. Paramo*, 775 F.3d 1182, 1190 (9th Cir. 2015). Similarly, the Second Circuit observed that "[a]n allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Here, by contrast, Asemani's principal allegation is that a background threat inheres in his placement in a certain population. Unlike the prisoners in *Williams* and *Chavis*, he does not identify a particular recent threat (or pattern of threats) substantiating a danger that is sufficiently "imminent" under § 1915(g).

### III.

Because we conclude that the three-strikes rule bars Asemani from proceeding IFP on appeal, we must address his contention that the rule is unconstitutional as applied to his case. The Supreme Court has held that, in certain situations, a litigant is constitutionally entitled to a waiver of filing fees. The primary circumstance in which the Constitution requires waiver of court fees is when an indigent person challenges his criminal conviction. *See Griffin v. Illinois*, 351 U.S. 12, 17-18 (1956). Outside the criminal context, the Supreme Court has recognized only "a narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court fees." *M.L.B. v. S.L.J.*, 519 U.S. 102, 113 (1996). Asemani asserts that the action he brings falls within that "narrow category of civil cases" because it involves an important interest—a claim of right to naturalized United States citizenship. Because the PLRA's three-strikes rule would effectively deny him the

ability to vindicate that interest, he argues, the statute is unconstitutional as applied to his case.

Even assuming arguendo that the PLRA's three-strikes rule might raise constitutional concerns when a prisoner seeks access to the courts to vindicate certain fundamental rights, *see Thomas v. Holder*, 750 F.3d 899, 909 (D.C. Cir. 2014) (Tatel, J., concurring), we conclude that this is not such a case. The Supreme Court has cautioned repeatedly that "a constitutional requirement to waive court fees in civil cases is the exception, not the general rule." *M.L.B.*, 519 U.S. at 114 (citing *United States v. Kras*, 409 U.S. 434 (1973)). The Court has recognized such a requirement only in a handful of cases involving "state controls or intrusions on family relationships." *Id.* at 116. Those cases differ from "the mine run of [civil] cases," according to the Court, because "[c]hoices about marriage, family life, and the upbringing of children are among associational rights [the] Court has ranked as 'of basic importance to our society.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 376 (1971)).

Apart from that context, however, the Court has consistently rejected claims that other important interests merit the same constitutional treatment. For example, the Court has held that securing bankruptcy discharge in order to obtain a "desired new start in life" is an "important" interest, but does "not rise to the same constitutional level" as averting state intrusions into family life. *Kras*, 409 U.S. at 444-45. The Court has likewise rejected a claim of constitutional entitlement to a waiver of filing fees in connection with a challenge to the termination of welfare benefits. *Ortwein v. Schwab*, 410 U.S. 656 (1973) (per curiam).

Asemani argues that his action asserting "a claim of right to U.S. citizenship and a concomitant right against removal to

Iran," Amicus Br. 40, should be added to the "narrow category of civil cases" in which access to the courts must be guaranteed regardless of a party's ability to pay, *M.L.B.*, 519 U.S. at 113. But Asemani points to no case in which a court has recognized an alien's claim of right to the grant of naturalized citizenship to be on par with the claimed right to avoid "state controls or intrusions on family relationships" discussed by the Supreme Court in *M.L.B.* *Id.* at 116. Instead, Asemani relies on *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality op.). In that case, the Court suggested that a native-born United States citizen has a "fundamental right" to retain his citizenship as long as he does not "voluntarily renounce or abandon" it. *Id.* at 93. But *Trop* and other such cases speak to the government's ability to *revoke* a citizen's citizenship, however acquired. *See, e.g.*, *Fedorenko v. United States*, 449 U.S. 490, 505-06 (1981); *Afroyim v. Rusk*, 387 U.S. 253, 267-68 (1967). There is no argument here that Asemani's citizenship or immigration status has been revoked or altered by USCIS. In fact, the argument is the opposite—Asemani is an alien who believes that USCIS erred when it failed to alter his immigration status through the naturalization process.

We are aware of no case suggesting that an alien has the sort of fundamental right associated with obtaining naturalized citizenship status that would qualify for a constitutional entitlement to a fee waiver under the Supreme Court's decision in *M.L.B.* To the contrary, the naturalization process lacks many of the indicators the Court has found important in delimiting the "narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court fees." *M.L.B.*, 519 U.S. at 113. Unlike the interests at issue in *M.L.B.* and *Boddie v. Connecticut*, 401 U.S. 371, Asemani's interest in obtaining citizenship through naturalization does not involve state-imposed "controls or intrusions on family relationships."

*M.L.B.*, 519 U.S. at 116. Nor is the naturalization process "quasi criminal in nature," unlike the "State's devastatingly adverse action" considered in *M.L.B.*, in which the plaintiff, "[l]ike a defendant resisting criminal conviction," sought to withstand "the State's authority to sever permanently a parent-child bond." *Id.* at 116, 124-25. Instead, citizenship granted via naturalization—like bankruptcy discharge, *Kras*, 409 U.S. 434, or welfare benefits, *Ortwein*, 410 U.S. 656— involves a discretionary benefit conferred by statute. The Court has made clear that Congress enjoys "broad power over naturalization and immigration," *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathew v. Diaz*, 426 U.S. 67, 79-80 (1976)), and that "[n]o alien has the slightest right to naturalization unless all statutory requirements are complied with," *United States v. Ginsberg*, 243 U.S. 472, 475 (1917).

The specific claims made in this case thus fall "with[in] the generality of civil cases, in which indigent persons have no constitutional right to proceed *in forma pauperis*." *M.L.B.*, 519 U.S. at 119. In such a situation, "the applicable equal protection standard 'is that of rational justification.'" *Id.* at 115-16 (quoting *Ortwein*, 410 U.S. at 660). The three-strikes rule readily meets that standard in these particular circumstances. "The State's need for revenue to offset costs, in the mine run of cases, satisfies the rationality requirement." *Id.* at 123. The three-strikes rule also furthers Congress's expressed interest in stemming a perceived "flood[]" of "meritless claims." *Chandler*, 145 F.3d at 1356. We therefore conclude that the three-strikes rule is constitutional as applied to this action.

\* \* \* \* \*

For the foregoing reasons, we deny Asemani's motion to proceed IFP and do not reach the merits of his appeal. *See*

*Pinson*, 761 F.3d at 5-6; *Smith*, 182 F.3d at 30. Under this circuit's precedent, Asemani now has a choice. If he wishes to proceed with this appeal, he has thirty days from the date of this opinion to pay the filing fee up front. *See Mitchell*, 587 F.3d at 422. But Asemani may also elect not to proceed with his appeal, in which case his appeal will be dismissed and no fees will be collected. *See Smith*, 182 F.3d at 30; *Wooten v. D.C. Metro. Police Dep't*, 129 F.3d 206, 208 (D.C. Cir.1997).

We note that Asemani's arguments in favor of proceeding IFP on appeal directly mirror his arguments challenging the district court's decision to revoke IFP status. As we have already rejected those arguments in this opinion, Asemani, were he to choose to pay the filing fee and proceed with his appeal, would likely be paying "to have us say essentially what we have already said about his case." *Wooten* 129 F.3d at 208.

*So ordered.*