**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LONNIE CLARK WILLIAMS, JR.,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>DANIEL PARAMO, Warden; R.<br>OLSON, Correctional Counselor II;<br>E. MARRERO,<br>*Defendants-Appellees*. | No. 13-56004<br><br>D.C. No.<br>3:12-cv-00113-<br>BTM-RBB<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted
May 15, 2014—Pasadena, California

Filed January 7, 2015

Before: Harry Pregerson, Stephen Reinhardt, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Reinhardt

## SUMMARY[*]

### Prisoner Civil Rights

The panel granted a prisoner's request to proceed in forma pauperis on appeal, and vacated the district court's summary judgment and remanded for further proceedings on the issue of whether the prisoner exhausted her administrative remedies under the Prison Litigation Reform Act.

The panel held that under the Prison Litigation Reform Act, a prisoner who has three strikes under 28 U.S.C. § 1915(g), and who has demonstrated in the district court that she falls within the imminent danger exception in order to proceed in forma pauperis must still qualify under this exception at the time of appeal by alleging a continued existence of imminent danger at the time the notice of appeal is filed. The panel further concluded that the standard set forth in *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007), applies in determining whether a prisoner has shown an imminent danger on appeal. Under *Andrews*, a prisoner may meet this requirement by alleging that prison officials continue with a practice that has injured her or others similarly situated in the past, or that there is a continuing effect resulting from such a practice. The panel further held that a prisoner who was found by the district court to sufficiently allege an imminent danger is entitled to a presumption that the danger continues at the time of the filing of the notice of appeal. Applying this standard to plaintiff,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the panel determined that she could proceed in forma pauperis on appeal.

The panel concluded that the district court erred in granting summary judgment to the defendants on the issue of exhaustion of administrative remedies. Viewing the evidence in the light most favorable to plaintiff and applying the burden-shifting test established in *Albino v. Baca*, 747 F.3d 1162, 1158 (9th Cir. 2014) (en banc) and *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996), the panel held that plaintiff met her burden of production in showing that administrative remedies were not available to her because she alleged that she was thwarted from filing a grievance and appeal. The panel held that defendants had not met their burden of establishing that plaintiff did not exhaust her available administrative remedies.

**COUNSEL**

Jennifer Chou (argued), Certified Law Student, UCLA School of Law Ninth Circuit Clinic, Los Angeles, California; Strefan Fauble (argued) and Carlos M. Lazatin, Attorneys, O'Melveny & Myers LLP, Los Angeles, California, for Plaintiff-Appellant.

Suzanne Antley (argued), Deputy Attorney General; Kamala D. Harris, Attorney General of California; Jonathan L. Wolff, Senior Assistant Attorney General; and Thomas S. Patterson, Supervising Deputy Attorney General, San Diego, California, for Defendants-Appellees.

**OPINION**

REINHARDT, Circuit Judge:

Lonnie Williams, a California prisoner representing herself pro se,[1] filed a civil rights action pursuant to 42 U.S.C. § 1983 in 2012 against Officers Daniel Paramo, R. Olsen, and E. Marrero of the Richard J. Donovan Correctional Facility in San Diego (RJD) and against the County of Los Angeles, alleging violations of her constitutional rights to due process of law and to be free from cruel and unusual punishment. In this appeal, we decide whether the Prison Litigation Reform Act (PLRA) requires a prisoner who is otherwise barred from proceeding in forma pauperis under its "three strikes" provision to show that she faces an imminent danger on appeal when a showing of such danger has already been made before the district court. We conclude that it does, but that there is a presumption of continuing danger and that Williams has accordingly satisfied the statutory requirement. We also conclude that the district court erred in dismissing Williams's suit for failure to exhaust her administrative remedies.

**I.**

Congress enacted the PLRA in an effort to curb the large number of prisoner lawsuits filed in federal court. *Jones v. Bock*, 549 U.S. 199, 202 (2007). The PLRA contains a number of provisions intended to reduce the number of such

---

[1] Williams identifies as a transgender woman, and we refer to her as a woman even though she is classified as male in the prison records.

lawsuits.[2]  *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing § 1997e(c) (dismissal of meritless claims), § 1997e(d) (restricting attorney's fees), and § 1997e(e) (prohibiting damages for emotional injury without showing of physical injury)).  Among these provisions, and relevant to this appeal, is a requirement that prisoners exhaust "such administrative remedies as are available" prior to bringing an action in federal court.  42 U.S.C. § 1997e(a).  In addition to the screening mechanisms, Congress also amended the procedures for allowing prisoners to proceed in forma pauperis.  Under 28 U.S.C. § 1915, prisoner litigants are required to pay court filing fees, although financially qualified prisoners may pay the fees in increments. Section 1915(g), known as the "three-strikes" provision, prohibits prisoners from proceeding in forma pauperis if they have brought three or more actions or appeals that have been deemed frivolous or malicious or have been held to fail to state a claim.[3]  Prisoners who are "under imminent danger of

---

[2] It is not clear, however, that a central premise for enacting the PLRA—that prisoners were flooding courts with frivolous lawsuits in increasing numbers— is entirely accurate.  Prisoner litigation increased in the 1980s and the 1990s due to the rapid increase in the incarcerated population over those years, and state and federal prisoners filed lawsuits in roughly the same proportions as non-inmates, both before and after the increase.  Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1692 (2003).

[3] Section 1915(g) provides, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

serious physical injury," however, may proceed in forma pauperis notwithstanding the fact that they fall within the three-strikes provision. *Id.* On this appeal, we consider first whether Williams must continue to face an imminent danger at the time she files her notice of appeal in order to proceed in forma pauperis on appeal, and, if so, whether she does continue to do so in the case before us.[4] Second, we consider whether the Defendants have met their burden of demonstrating that Williams has failed to exhaust available administrative remedies under § 1997e.

## II.

In her complaint, Williams alleged the following: that prison officials Daniel Paramo, R. Olson, and E. Marrero started rumors that she was a convicted sex offender and added an "R" suffix to her prison record, denoting that she had a history of sex offenses;[5] that as a result of her designation as a sex offender, members of the Two-Five prison gang threatened her and stated that they would "get" her; that Williams attempted to report her complaints, but when she did, Officer Daniel Paramo allegedly told her, "So what! That is not my problem! That is your problem!"; that despite Paramo's rejection, Williams tried again; and that she attempted to file a grievance to the RJD appeals office on the

---

[4] Williams has not challenged the constitutionality of the three strikes provision here, and we express no view on the question of § 1915(g)'s constitutionality.

[5] Under the California Code of Regulations, inmates receive an "inmate custody designation," which determines where an inmate is housed and the level of security necessary. Cal. Code Regs. tit. 15, § 3377.1. An "R" suffix is given to inmates "who have a history of specific sex offenses as outlined in Penal Code . . . Section 290." *Id.* § 3377.1(b)(2).

afternoon of January 5, 2012, but Correctional Counselor R. Cobb refused to file her grievance and rejected her appeal.

Williams moved for leave to proceed in forma pauperis, and the district court granted her motion. Although the district court found that Williams had filed three previously dismissed lawsuits and would otherwise be barred from proceeding in forma pauperis under § 1915(g), it granted her motion because it concluded that she satisfied the exception by alleging an "imminent danger of serious physical injury."[6]

The Defendants subsequently filed a 12(c) motion for judgment on the pleadings arguing that Williams had failed to exhaust her administrative remedies. In support of their motion, Defendants submitted declarations from J. Ramirez, the Appeals Coordinator at RJD, and J.D. Lozano, Chief of the Office of Appeals. Both declarations described the formal complaint process under Title 15 of the California Code of Regulations, but the declarations provided no details regarding how the grievance and appeals procedures were administered at RJD nor any information regarding how prisoners were informed of these procedures. The only portions of the declarations specific to Williams pertained to the officers' review of her previously filed grievances and appeals. Officer Ramirez stated that a search of Williams's previous appeals did not turn up an appeal related to her complaint, and he concluded that she "did not properly submit any appeals to this office regarding the allegations" in her complaint. Similarly, Officer Lozano listed several third

---

[6] The district court also concluded that Williams sufficiently stated an Eighth Amendment failure to protect claim against Defendants Paramo, Olsen, and Marrero but dismissed the claim against the County of Los Angeles.

level appeals[7] that had been received by his office from Williams but stated that none of them involved the allegations in her complaint, and he similarly concluded that she had therefore "not exhaust[ed] any appeal at the Third Level relating to the issues" in her complaint.

The district court notified Williams of Defendants' motion to dismiss pursuant to *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014), and required Williams to file her opposition by March 22, 2013. On May 28, 2013, having received no timely opposition from Williams, the district court granted Defendants' motion to dismiss for failure to exhaust, dismissed Williams's case without prejudice, and entered a judgment for Defendants.

On June 4, 2013, Williams filed late objections to Defendants' motion for judgment on the pleadings and stated that "prison officials would not file or allow [her] to file a grievance" and again cited the facts in her complaint. She further stated that she "'attempted' to exhaust her administrative remedies as to all the allegations alleged in the complaint and was hampered by prison officials." Approximately two weeks later, Williams submitted a declaration explaining that she had been transferred to the Department of Mental Health in Vacaville (DMH) and could not timely file her opposition because she was not given her legal documents and personal belongings until after the district court granted Defendants' motion.

---

[7] A third level appeal is the final step in the administrative appeals process. Cal. Code Regs. tit. 15, § 3084.2.

Construing Williams's objections as a motion for reconsideration, the district court denied Williams's motion. The district court concluded that Williams did not provide "any documents, let alone specific factual allegations, that would defeat the evidentiary support provided by Defendants."

Williams subsequently filed a timely notice of appeal. Prior to her appeal, however, Williams was transferred from her original facility, RJD, to the California State Prison in Sacramento (CSP-Sac).[8]  This court ordered Williams to show cause why her in forma pauperis status should not be revoked on appeal.  Williams filed a response stating that she remained in imminent danger at her current facility, CSP-Sac, because Defendants had told inmates at CSP-Sac that she was a convicted sex offender and child molester.  In her response, she stated that the inmates at CSP-Sac constantly threatened to kill her with "inmate manufactured weapons" and to unlock their handcuffs with "cuff keys" in order to kill her. Defendants filed a reply asking the court to revoke Williams's in forma pauperis status and arguing that Williams failed to show a "nexus" between her lawsuit and her newly alleged imminent danger at CSP-Sac.  We subsequently discharged the order to show cause and appointed Williams pro bono counsel.  We have jurisdiction over Williams's appeal under 28 U.S.C. § 1331 and 28 U.S.C. § 1291.

---

[8] Defendants filed a motion to revoke Williams's in forma pauperis status after she was transferred to CSP-Sac on the basis that she was no longer in imminent danger.  Relying on *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007), the district court denied the motion on the ground that Williams was required to demonstrate imminent danger only at the time she filed her complaint.

**III.**

**A.**

We first address Defendants' contention that a prisoner who has three strikes under § 1915(g) and who has demonstrated in the district court that she falls within the imminent danger exception in order to proceed in forma pauperis must still qualify under this exception at the time of appeal. We expressly declined to address this question in *Andrews v. Cervantes*, 493 F.3d 1047 (9th Cir. 2007), because there had been no change in the danger faced by the prisoner between the time he filed his complaint and the time he filed his appeal. *Id.* at 1053 n.4. We now conclude that the text of the statute requires that plaintiffs must allege the continued existence of imminent danger at the time the notice of appeal is filed.

The parties raise several arguments regarding the history and structure of the PLRA, but we believe that the plain meaning of the statute controls here. Because we assume that Congress means what it says in a statute, the "plain meaning of a statute controls where that meaning is unambiguous." *Khatib v. Cnty. of Orange*, 639 F.3d 898, 902 (9th Cir. 2011) (en banc). Section 1915(g) states,

> In no event shall a prisoner bring a civil action or *appeal a judgment in a civil action* or proceeding under this section if the prisoner has, on 3 or more prior occasions, . . . brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted,

> unless the prisoner is under imminent danger
> of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added). By its terms, § 1915(g) prohibits a prisoner from proceeding in forma pauperis *on appeal* if the prisoner has three strikes "unless the prisoner is under imminent danger of serious physical injury." We concluded in *Andrews* that § 1915(g) required a showing of imminent danger "at the time the prisoner filed the complaint" because of the section's use of the present tense and its concern with the initial act of "bring[ing] the action." 493 F.3d at 1053. That analysis applies here as well. The use of the word "shall" and the present tense "appeal" permits a Court of Appeals to assess whether the imminent danger exception applies at the time of the appeal. The final phrase of § 1915(g) — "is under imminent danger of serious physical injury" — applies to the entire subsection, not just to the portion that prohibits a three-strikes prisoner from bringing a civil action in the district court.

Finally, the use of the disjunctive word "or" between the verb phrases "bring a civil action" and "appeal a judgment" denotes two different times at which the prisoner must make the imminent danger showing. Had the statute stated, "In no event shall a prisoner bring a civil action *and* appeal a judgment in a civil action . . . " we might conclude that a single determination at the time the complaint was filed is sufficient because the conjunctive "and" would require us to treat both the bringing of the action and the appeal as part of a single, conjunctive whole. Instead Congress has insisted that the prisoner take neither of the two actions unless the specified condition is met. In short, she must be eligible both at the time the complaint is filed and at the time of the notice

of appeal.[9]  Because "[i]t is not our function to devalue the English language by disregarding the meaning of words," *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1110 (9th Cir. 2009) (Reinhardt, J., specially concurring), we conclude that a prisoner who falls within the three strikes provision and seeks forma pauperis status may be required to show that an imminent danger exists at the time the notice of appeal is filed.

The decisions of other circuits appear to support this conclusion.  No other circuit has devoted substantial analysis to the question whether a court of appeals may require a prisoner to show an imminent danger at the time the notice of appeal is filed, but those that have addressed the question have concluded that a three-strikes prisoner must do so.  In *Baños v. O'Guin*, 144 F.3d 883 (5th Cir. 1998), for example, the Fifth Circuit concluded that an imminent danger finding must be made at the time the notice of appeal is filed.  The court stated, "In order to implement the statutory scheme, we must determine if danger exists *at the time the plaintiff seeks to file his complaint or notice of appeal IFP.*  Likewise, the language of § 1915(g), by using the present tense, clearly refers to the time when the action or appeal is filed or the

---

[9] Moreover, the addition of Rule 24(a)(3)(B) to the Federal Rules of Appellate Procedure supports the conclusion that a three-strikes prisoner must make a separate showing of imminent danger on appeal.  Rule 24(a)(3)(B) provides that, "A party who was permitted to proceed in forma pauperis in the district-court action . . . may proceed on appeal in forma pauperis without further authorization, unless: . . . (B) a statute provides otherwise."  Fed. R. App. P. 24(a)(3)(B).  Subparagraph B was apparently added in order to reconcile Rule 24's automatic authorization with the requirements of the PLRA and to require a prisoner to seek permission to proceed in forma pauperis on appeal.  Fed. R. App. P. 24(a)(3) advisory committee's note.

motion for IFP status is made." *Id.* at 885; *see also Choyce v. Dominguez*, 160 F.3d 1068, 1070–71 (5th Cir. 1998) (interpreting *Baños* as requiring an imminent danger finding on appeal). The Third and Eighth Circuits have also concluded, albeit without discussion, that imminent danger must be shown at the time the notice of appeal is filed, *Ball v. Famiglio*, 726 F.3d 448, 467 (3d Cir. 2013); *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003), and the Tenth Circuit has expressly reserved the question, *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1180 (10th Cir. 2011). Thus, we join the Third, Fifth, and Eighth Circuits in concluding that a three-strikes prisoner may be required to demonstrate an imminent danger at the time the notice of appeal is filed in order to proceed in forma pauperis on appeal.

We do so reluctantly, because if a prisoner is denied forma pauperis status on appeal on the ground that he no longer faces an imminent danger, his inability to pay the filing fee may deprive a court of appeals of the opportunity to correct any errors committed by the district court. Although the PLRA was intended to impose the costs of litigation on prisoners, its purposes do not extend as far as immunizing erroneous district court decisions. *See Abdul-Akbar v. McKlevie*, 239 F.3d 307, 314 (3rd Cir. 2001). Moreover, as scholars and judges have noted, the three-strikes provision raises grave constitutional concerns. *See, e.g.*, *Thomas v. Holder*, 750 F.3d 899, 904–09 (D.C. Cir. 2014) (Tatel, J., specially concurring). Any extension of § 1915(g)'s provisions should cause us to proceed with caution.

Although these concerns are not sufficient to overcome the statute's plain command requiring a showing of imminent danger at the time of appeal, they provide good reason for us

not to depart on appeal from the standard we have developed for determining imminent danger at the time of the filing of the complaint. In that context we have held that a prisoner need only make a "plausible allegation" that he is in "imminent danger." *Andrews*, 493 F.3d at 1055. More specifically, it is sufficient for the prisoner to allege that he faces an "ongoing danger," even if he is not "directly exposed to the danger at the precise time he filed the complaint." *Id*. at 1056. Thus, "a prisoner who alleges that prison officials continue with a practice that has injured him or others similarly situated in the past will satisfy the 'ongoing danger' standard." *Id*. at 1056–57. We now adopt *Andrews* as the standard for determining "imminent danger" on appeal as well. We do so having in mind "that § 1915(g) concerns only a threshold procedural question—whether the filing fee must be paid upfront or later," *id.* at 1055—and that "[s]eparate PLRA provisions are directed at screening out meritless suits early on." *Id*. (citing 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)). As we explained in *Andrews*, the limited office of § 1915(g) in determining whether a prisoner can proceed in forma pauperis counsels against an overly detailed inquiry into the allegations that qualify for the exception. *Id.* This is even more so when an inquiry must be conducted by a court of appeals, which, unlike a district court, is ill-equipped to engage in satellite litigation and adjudicate disputed factual matters. *Von Kennel Gaudin v. Remis*, 282 F.3d 1178, 1183 (9th Cir. 2002). It is thus particularly important that the inquiry ordinarily be conducted through analysis of the prisoner's facial allegations and that these allegations be liberally construed. The inquiry is in essence administrative and may be conducted as such.

We thus hold, consistent with *Andrews*, that a prisoner subject to the three-strikes provision may meet the imminent

danger exception and proceed in forma pauperis on appeal if he alleges an ongoing danger at the time the notice of appeal is filed. The prisoner may meet this requirement by "alleg[ing] that prison officials continue with a practice that has injured him or others similarly situated in the past," *Andrews*, 493 F.3d at 1057, or that there is a continuing effect resulting from such a practice. We also conclude that a prisoner who was found by the district court to sufficiently allege an imminent danger is entitled to a presumption that the danger continues at the time of the filing of the notice of appeal. Just as the financial filings required of prisoners seeking to proceed in forma pauperis in the court of appeals are not subjected to detailed factual review and are handled administratively, we see no need to subject a prisoner's allegations of imminent danger to "overly detailed" review by panels of the court. *Id.* at 1055. In enacting the PLRA, Congress intended to reduce the flood of litigation brought by prisoners, *see Woodford*, 548 U.S. at 84, not by a process that would have the opposite effect, spawning additional litigation and creating mini-trials over whether a prisoner has shown an imminent danger. An affidavit or declaration by the prisoner that alleges an ongoing danger at the time of the filing of the notice of appeal will ordinarily suffice to end the inquiry and allow the prisoner to proceed in forma pauperis.

Applying our test to Williams, we conclude that she sufficiently alleged an ongoing danger at the time she filed her notice of appeal. Williams alleges an ongoing danger—threats to her safety by other inmates—that arises from the conduct of the original Defendants. In her response to our order to show cause, she stated that she "is receiving constant, daily threats of irreparable harm, injury and death due to the prison officials and defendants revealing to other inmates (where the appellant is incarcerated) that the

appellant is, allegedly, a convicted sex offender and child molester, which is not true." Properly construed, Williams's allegations are clearly related to her initial complaint regarding the rumors started by Defendants and their erroneous assignment of an "R" suffix to her prison file. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). For these reasons, Williams may proceed in forma pauperis on this appeal.

**B.**

The district court granted Defendants' motion for judgment on the pleadings because it concluded that Williams "failed to submit any evidence to rebut Defendants' showing that she failed to properly exhaust her administrative grievances prior to bringing this action." Because there were genuine disputes of material fact and because Defendants did not carry their burden of demonstrating that Williams failed to exhaust *available* administrative remedies, summary judgment was inappropriate and we remand for further proceedings.

The PLRA requires a prisoner to exhaust "available administrative remedies" before bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 736 (2001). A defendant may raise failure to exhaust administrative remedies as an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Until recently, the law in our circuit held that the proper procedural device to raise a failure to exhaust administrative remedies was an unenumerated 12(b) motion. *See Wyatt*, 315 F.3d at 1119. In *Albino v. Baca*, however, we reversed our prior judgment and held that the proper procedural device for determining whether administrative

remedies have been exhausted is a summary judgment motion. 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc). Although the district court granted Defendants' motion for judgment on the pleadings, a district court's dismissal of a complaint may be treated as a summary judgment order if the court considered extraneous evidence submitted by the parties in adjudicating the motion. *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1507 (9th Cir. 1990). Because it is clear that the district court considered evidence submitted by the parties in reaching its decision, we construe the district court's order as a grant of summary judgment on the issue of exhaustion.[10] *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

We review de novo a district court's grant of summary judgment for failure to exhaust administrative remedies. *Albino*, 747 F.3d at 1168. A grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence must be viewed in the light most favorable to the nonmoving party. *Albino*, 747 F.3d at 1168.

*Albino* also established that the appropriate means of determining whether a defendant has proved a failure to exhaust is governed by the same burden-shifting regime used to evaluate exhaustion under the Torture Victim Protection Act, as articulated in *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996). 747 F.3d at 1172. Under that regime, a

---

[10] Construing the district court's order as one granting summary judgment also comports with *Albino*'s recognition that the procedural change it effected may have been merely one of "nomenclature." *Albino*, 747 F.3d at 1166.

defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy. *Id.* (quoting *Hilao*, 103 F.3d at 778 n. 5). Then, the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* (quoting *Hilao*, 103 F.3d at 778 n. 5). The ultimate burden of proof, however, remains with the defendants. *Id.*

Viewing the evidence in the light most favorable to Williams and applying the *Albino/Hilao* burden-shifting test, the district court erred in granting judgment to the Defendants. First, Williams met her burden of production in showing that administrative remedies were not available to her. "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.* at 1171 (quoting *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002)). Williams alleged in her complaint that she first tried informing Officer Paramo about the facts alleged in her complaint, but that he did not help her and told her, "So what! That is not my problem! That is your problem!"[11] She then attempted to file a grievance and an appeal on January 5, 2012 with Officer Cobb, who rejected the grievance and refused to file the appeal. Because an administrative remedy is not available if "prison officials inform the prisoner that he cannot file a grievance," Williams's statements that she was thwarted from filing a grievance and appeal meet her burden

---

[11] We treat Williams's complaint as an affidavit because it was made under penalty of perjury. *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996).

of production. *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) (quoting *Croak*, 312 F.3d at 113 (internal quotation marks omitted)).

The evidence produced by the Defendants at most meets their burden of demonstrating a system of available administrative remedies at the initial step of the *Albino* burden-shifting inquiry, but Defendants have not carried their ultimate burden of proof in light of Williams's factual allegations. The evidence submitted by Defendants generally outlines the procedure for filing a formal complaint, but it does not rebut Williams's evidence that administrative remedies were not available to her because her filings were rejected by prison officials. Nor do Defendants provide evidence that Williams failed to follow prison procedures by attempting to file her grievance and appeal with Officers Cobb and Paramo. *See Woodford*, 548 U.S. at 90–91 (holding that proper exhaustion requires compliance with agency's deadlines and procedures).

Defendants argue that remedies were available to Williams as evidenced by the multiple unrelated appeals that she was able to file successfully. This argument is a virtual non-sequitur because it does nothing to rebut Williams's evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case. Other circuits have similarly concluded that defendants may not simply rely on the existence of an administrative review process to overcome a prisoner's showing that administrative remedies were not available to him. In *Hemphill v. New York*, for example, the Second Circuit held that merely showing that grievance mechanisms are in place does not end the inquiry into availability where the plaintiff claims that threats by prison officials made the

remedy functionally unavailable to him. 380 F.3d 680, 687–88 (2d Cir. 2004); *see also Dillon v. Rogers*, 596 F.3d 260, 268–69 (5th Cir. 2010) (holding that records showing 53 other inmates had filed grievances during the period in question did not demonstrate that administrative remedy was available to plaintiff). Moreover, permitting a defendant to show that remedies merely existed in a general sense where a plaintiff has specifically alleged that official action prevented her from filing a particular grievance would force a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear. *Albino*, 747 F.3d at 1172.

Because Defendants did not meet their burden of demonstrating that Williams had not exhausted available administrative remedies, we conclude that summary judgment was improper and we remand for further proceedings. *See Dillon*, 596 F.3d at 267 (remanding the case because the record was not sufficiently developed when the district court granted summary judgment); *Hemphill*, 380 F.3d at 689 (remanding to district court for further proceedings because the court could not conclude based on the evidence whether the threats plaintiff received rendered administrative remedies unavailable).

## IV.

We conclude that a court of appeals may require a three-strike prisoner seeking forma pauperis status to show an imminent danger at the time the notice of appeal is filed. We further conclude that the *Andrews* standard is the appropriate one to be applied in determining whether a prisoner has shown an imminent danger on appeal, and that applying that standard to Williams's case, she may proceed in forma pauperis on appeal. Finally, we conclude that the district

court erred in granting summary judgment to the Defendants on the issue of exhaustion, and that Defendants have not met their burden of establishing that Williams did not exhaust available administrative remedies. Accordingly, we grant Williams the right to proceed in forma pauperis on appeal; we also vacate the order of the district court and remand for further proceedings on the issue of exhaustion.

**GRANTED; VACATED and REMANDED.**