# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 15, 2020          Decided July 7, 2020

No. 18-5331

JEREMY PINSON,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00486)

———

*Anthony F. Shelley,* appointed by the court, argued the cause as amicus curiae in support of appellant. With him on the briefs was *Dawn E. Murphy-Johnson*, appointed by the court.

*Peter C. Pfaffenroth*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

_____

No. 18-5375

MICHAEL S. GORBEY,
APPELLANT

v.

UNITED STATES OF AMERICA,
APPELLEE

_____

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02672)

_____

*Anthony F. Shelley,* appointed by the court, argued the cause as amicus curiae in support of appellant. With him on the briefs was *Dawn E. Murphy-Johnson*, appointed by the court.

*Michael S. Gorbey*, pro se, filed the briefs for appellant.

*Peter C. Pfaffenroth*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: TATEL and RAO, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Under the Prison Litigation Reform Act's (PLRA) three-strikes rule, indigent prisoners who have

had three or more actions dismissed as "frivolous, malicious, or [for] fail[ure] to state a claim" may not "bring a civil action or appeal a judgment" in forma pauperis (IFP). 28 U.S.C. § 1915(g). This rule, however, has an important exception: three-strike prisoners may proceed IFP if they are "under imminent danger of serious physical injury." *Id*. In these two related cases, Michael Gorbey and Jeremy Pinson, both incarcerated three-strikers, seek to bring their appeals IFP on the ground that they face imminent danger. In the alternative, Pinson contends that she should be permitted to proceed IFP because, as applied to her appeal, the three-strikes rule is unconstitutional. The government opposes the prisoners' requests, arguing that neither Gorbey nor Pinson faced imminent danger at the relevant time and that, even if they did, their underlying claims are unrelated to the dangers they purportedly faced. The government also insists that the three-strikes rule poses no constitutional difficulties.

We reject the prisoners' requests. As explained below, to proceed under the exception, three-strike prisoners must show an imminent danger at the time of their appeal and a nexus between that danger and their underlying claims. Gorbey has failed to demonstrate a nexus between the danger he faced and the claims he brought, and Pinson has failed to show that she faced imminent danger at the time she noticed her appeal. As for Pinson's alternative argument, even assuming that some prisoners can make out viable as-applied constitutional challenges to the three-strikes rule, Pinson has failed to do so.

## I.

Generally, all litigants, including incarcerated litigants, must pay prescribed filing fees to pursue civil actions in federal courts. *Id*. § 1914(a). Courts, however, have broad authority to

waive such fees for indigent litigants who qualify to proceed IFP. *Id.* § 1915(a).

In the 1990s, "Congress . . . concluded that prisoner litigants were abusing the [federal IFP] statute by flooding the courts with meritless claims." *Chandler v. District of Columbia Department of Corrections*, 145 F.3d 1355, 1356 (D.C. Cir. 1998). It responded by passing the PLRA, which "enacted a variety of reforms designed to filter out the bad [prisoner] claims and facilitate consideration of the good." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

To that end, the PLRA "established new standards for the grant of IFP status to prisoners." *Chandler*, 145 F.3d at 1356. The statute requires incarcerated litigants, including indigent ones, "to pay the full amount of [the] filing fees." 28 U.S.C. § 1915(b)(1). Those who qualify for IFP status may pay such fees in installments over time. *Id.* § 1915(b)(2). But under the so-called three-strikes rule, certain repeat prisoner-litigants are precluded from proceeding IFP at all:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

*Id*. § 1915(g). To pursue federal actions, then, three-strike prisoners must pay filing fees up front and in full, rather than in installments over time. Central to this case, however, the

final clause of section 1915(g) creates a limited exception to this rule: even three-strike prisoners may proceed IFP—i.e., they may pay filing fees in installments—if they are "under imminent danger of serious physical injury." *Id.*

Here, both Gorbey and Pinson are three-strikers—that is, both have had three or more actions dismissed as "frivolous, malicious, or [for] fail[ure] to state a claim" and, consequently, are barred from proceeding IFP "unless [they are] under imminent danger of serious physical injury." *Id.* Each now seeks leave to proceed IFP on the ground that he (Gorbey) or she (Pinson) falls within the imminent-danger exception. Their requests raise similar legal issues regarding the exception's scope—whether to qualify under the exception on appeal prisoners must (1) show that they faced imminent danger at the time of filing their appeals, and (2) demonstrate a nexus between the harms they allege and the claims they bring. We appointed Anthony F. Shelley as amicus to present legal arguments on behalf of the prisoners—a role he has fulfilled admirably—and now resolve both cases together. We address the statute's general requirements before turning to the specifics of each prisoner's request.

## II.

On the first question, amicus and the government agree that prisoner-litigants must show that they faced imminent danger when they noticed their appeals. We too agree.

In *Asemani v. United States Citizenship & Immigration Services*, 797 F.3d 1069 (D.C. Cir. 2015), we explained that the "PLRA's three-strikes rule applies with equal force to 'a prisoner bring[ing] a[n] . . . appeal,'" meaning prisoner-litigants "cannot proceed IFP unless [they] demonstrate[] that [they are] 'under imminent danger of serious physical injury.'" *Id.* at 1073 (first two alterations in original) (quoting 28 U.S.C.

§ 1915(g)). There, we had no need to decide whether, in "determin[ing] the applicability of the imminent danger exception on appeal, . . . the relevant conditions are those at the time of bringing the action in district court or instead those at the time of bringing the appeal," given that the prisoner-litigant in that case had failed to make the requisite showing at either stage. *Id*. at 1075. We now resolve that question and conclude that the conditions prisoners faced at the time of noticing their appeals determine their eligibility to proceed under the exception.

Congress made this clear by including two temporal reference points in the statute—the act of "bring[ing] a civil action" and the act of "appeal[ing] a judgment"—and by separating those reference points with the word "or." 28 U.S.C. § 1915(g). That word's "ordinary use is almost always disjunctive, that is, the [phrases] it connects are to 'be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). In section 1915(g), use of the disjunctive indicates that prisoner-litigants must make the imminent-danger showing at two separate points in the litigation, upon "bring[ing] a civil action" and upon "appeal[ing] a judgment," 28 U.S.C. § 1915(g). As the Ninth Circuit observed in *Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015), "[h]ad the statute stated, 'In no event shall a prisoner bring a civil action *and* appeal a judgment in a civil action . . .' we might conclude that a single determination at the time the complaint was filed is sufficient because the conjunctive 'and' would require [courts] to treat both the bringing of the action and the appeal as part of a single, conjunctive whole." *Id*. at 1188. But that is not the statute Congress enacted; rather, section 1915(g)'s disjunctive construction requires prisoner-litigants proceeding under the exception to demonstrate that they faced imminent danger both

at the time they file their lawsuit and at the time they notice their appeal. *See id.* at 1189 (concluding the same).

To be sure, stray language in our prior decisions suggests that the only relevant conditions are those prisoners faced when bringing actions in district court. Most notably, in another case brought by Pinson, *Pinson v. Samuels*, 761 F.3d 1 (D.C. Cir. 2014), we rejected the parties' calls to consider "post-complaint developments when assessing the applicability of the imminent danger exception," explaining that section 1915(g) "directs attention to whether the prisoner 'is under imminent danger of serious physical injury' when he 'bring[s]' his action, not to whether he later in fact suffers (or does not suffer) a serious physical injury." *Id*. at 5 (quoting 28 U.S.C. § 1915(g)). But in *Asemani*, decided the following year, we clarified that the question of "[w]hether the relevant conditions are those at the time of bringing the action in district court or instead those at the time of bringing the appeal" remained open, while acknowledging that our "prior decisions" had focused on "the conditions faced by a prisoner when initially filing suit in the district court." 797 F.3d at 1075 (citing *Pinson*, 761 F.3d at 4–5). In any event, *Pinson*'s holding fully squares with the interpretation of section 1915(g) we adopt today because the "developments" that we refused to consider in that case occurred not only "post-complaint" but also post-appeal: the prisoner appealed in March 2010 and, in assessing the imminent-danger showing, we refused to consider incidents that occurred in August 2010 and January 2011. *Pinson*, 761 F.3d at 3–4.

Having established when prisoner-litigants must make the imminent-danger showing, we confront two additional questions: (1) whether we may consider imminent-danger allegations made for the first time on appeal; and (2) whether

we may venture beyond the prisoners' allegations in evaluating that showing.

Aligning again, amicus and the government agree that we may consider imminent-danger allegations newly offered on appeal. Once more, we concur, as it would make little sense for the PLRA to demand prisoners show they faced imminent danger at the time of their appeals only then to prohibit them from introducing allegations to support that showing. To be sure, having appellate courts parse such allegations "deviates from the typical approach of having a district court take a first look at a factual matter," *Gorbey* Appellee's Br. 23, but Congress can, and in the PLRA did, assign atypical roles to courts in particular circumstances, *see, e.g.*, 28 U.S.C. § 1253 (providing for direct Supreme Court review of an injunction issued by a district court of three judges).

On the second question—how to evaluate prisoners' allegations—our caselaw makes clear that we generally look to prisoners' "timely filing[s]" and "accept [those] factual allegations as true." *Asemani*, 797 F.3d at 1075. This comports with section 1915(g)'s "limited office" as a "mere screening device." *Pinson*, 761 F.3d at 5 (internal quotation marks omitted). A contrary approach would "spawn[] additional litigation and creat[e] mini-trials over whether a prisoner has shown an imminent danger," adding to, rather than reducing, "the flood of litigation brought by prisoners." *Williams*, 775 F.3d at 1190.

The government recognizes as much. *See Gorbey* Appellee's Br. 44 ("[I]mminent danger allegations generally are construed liberally and accepted as true."). It nevertheless insists that in *these* cases we should "scrutinize [the prisoners'] IFP allegations and . . . solicit additional information about [those] allegations" because other federal courts have rejected

similar requests by Gorbey and Pinson to proceed under the imminent-danger exception. *Id*. at 47; *see also id*. at 24 ("[O]ther courts, including the Fourth Circuit, already have concluded [that] the imminent danger allegations offered here by Gorbey do not suffice for the [exception]"); *Pinson* Appellees' Br. 43 (citing a decision from the Northern District of California rejecting Pinson's request to proceed IFP based on similar allegations). We have no need to decide, however, whether and under what circumstances section 1915(g)'s "limited office," *Pinson*, 761 F.3d at 5 (internal quotation marks omitted), permits courts to venture beyond prisoners' allegations in making the imminent-danger determination, *cf. Shepehrd v. Annucci*, 921 F.3d 89, 94 (2d Cir. 2019) ("[D]istrict courts—upon challenge by a defendant—may conduct a narrow evidentiary inquiry into the prisoner-litigant's fear of imminent danger"). As explained below, even limiting ourselves to Gorbey's and Pinson's "timely filing[s]" and "accept[ing] [those] factual allegations as true," *Asemani*, 797 F.3d at 1075, neither qualifies under the exception.

This brings us to the final issue common to both cases—whether prisoners must demonstrate a nexus between the harms they allege and the claims they bring.

Recall that Congress enacted the PLRA "to filter out the bad claims and facilitate consideration of the good." *Jones*, 549 U.S. at 204. The three-strikes rule effectuates that goal by imposing more onerous burdens on prisoner-litigants that have thrice been bounced from court. Within this statutory scheme, "the imminent danger exception is designed to provide a *safety valve* for the 'three strikes' rule[,] . . . permit[ting] an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger." *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (internal quotation marks omitted). Put differently, with the final clause

of section 1915(g), "Congress created a limited exception aimed at preventing future harms." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) (en banc).

Given that limited purpose, we hold that prisoners must demonstrate a nexus between the harms they allege and the claims they bring. *Cf. King v. Burwell*, 135 S. Ct. 2480, 2496 (2015) ("A fair reading of legislation demands a fair understanding of the legislative plan."). Otherwise, "an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy." *Pettus*, 554 F.3d at 297. And those claims would need not relate to, much less relieve, the alleged harms. Indeed, "a prisoner could pass through the safety valve with no intention of asking the courts to protect him." *Meyers v. Commissioner of Social Security Administration*, 801 F. App'x 90, 95 (4th Cir. 2020) (per curiam). It would make little sense to "conclude that with one hand Congress intended to enact a statutory rule that would reduce the huge volume of prisoner litigation, but, with the other hand, it engrafted an open-ended exception that would eviscerate the rule." *Abdul-Akbar*, 239 F.3d at 315. For that reason, every court of appeals to have passed on this question has concluded that section 1915(g) contains a nexus requirement, albeit largely in unpublished decisions. *See Meyers*, 801 F. App'x at 96 (collecting cases).

Amicus argues that the Supreme Court's decision in *Coleman v. Tollefson*, 135 S. Ct. 1759 (2015), requires the PLRA to be read literally and that, because no nexus requirement appears on the face of section 1915(g), *Coleman* precludes us from reading such a requirement into the statute. Not quite. In *Coleman*, the Supreme Court confronted a different statutory interpretation question involving the three-

strikes rule—whether "a dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal." 135 S. Ct. at 1763. Given that "the 'three strikes' provision applies where a prisoner 'has, on 3 or more prior occasions . . . brought an action or appeal . . . *that was dismissed*,'" the Court concluded that dismissals subject to appeal count as strikes because "[t]hat, after all, is what the statute literally says." *Id*. (alterations in original) (quoting 28 U.S.C. § 1915(g)). The Court went on, however, to explain that this "literal reading" also comported with the statute's structure and purpose. *Id*. at 1764. *Coleman*, then, stands for the unremarkable proposition that, as with any question of statutory interpretation, we construe section 1915(g) in light of the statute's "text, structure, purpose, and legislative history." *Pharmaceutical Research & Manufacturers of America v. Thompson*, 251 F.3d 219, 224 (D.C. Cir. 2001). And as explained above, those "traditional tools of statutory interpretation," *id*., establish that section 1915(g) requires a nexus between the harms prisoners allege and the claims they bring.

With that established, we turn to Gorbey's and Pinson's requests to proceed IFP on appeal. We address Gorbey's eligibility to proceed under the imminent-danger exception in Part III, Pinson's eligibility in Part IV, and the as-applied challenge in Part V.

**III.**

Gorbey is serving a twenty-year prison term and, during that time, has become a prolific litigator, filing scores of suits across the country. In this latest action, Gorbey alleged that various federal judges who presided over his previous cases and appeals violated the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. Specifically, Gorbey claimed that the judges

restricted his access to the courts by reading section 1915(g)'s imminent-danger exception too narrowly. According to Gorbey, this purported judicial misconduct exacerbated the conditions of his confinement and subjected him "to pain, serious physical injuries, [and] threat of death." *Gorbey* Compl. 6, *Gorbey* Appendix (*Gorbey* App.) 9. He sought $800,000 in damages and asked that section 1915(g) "be reformed to require immediate inquiries into allegations of imminent danger." *Id*. at 22, *Gorbey* App. 25.

Gorbey also applied to proceed IFP. The district court denied the request, finding that "[t]his plaintiff has accumulated at least three strikes" and "does not qualify under the imminent danger exception." Order, *Gorbey* App. 3. Gorbey appealed and the clerk of this court ordered him to show cause "why he should not be required to pay the full appellate filing fee before the court will consider this appeal." Order, *Gorbey v. United States*, No. 18-5375 (D.C. Cir. Dec. 31, 2018). In response, Gorbey claimed that he "[wa]s still under and suffering" from "conditions which . . . []resulted in[] serious bodily injuries," namely that the Bureau of Prisons (BOP): (1) assigned him a top bunk without a ladder, despite the fact that Gorbey suffered from chronic injuries that made climbing to a top bunk difficult and put him at risk of falling; (2) cancelled his December 2018 eye-doctor appointment, leaving him without medication or treatment for his glaucoma; (3) exposed him to "toxic black mold causing a list of infections and . . . posing a risk of serious sickness or death"; and (4) forced him to wear broken shoes, leading to wet feet and "a []threat of[] serious sickness." Resp. to Order to Show Cause 4–6, *Gorbey* App. 50–52. A motions panel discharged the show cause order and referred Gorbey's request to a merits panel.

The government now argues that we should deny Gorbey's application to proceed IFP because his allegations fail to establish imminent danger and because those allegations lack an adequate nexus to his underlying claims. We concur in the second point and, accordingly, have no need to address the first.

Amicus and the government offer different views as to what section 1915(g)'s nexus requirement entails. Analogizing to standing principles, the government argues that prisoners' claims must be "fairly traceable" to the harms alleged and that the relief requested must "redress" those harms. *Pinson* Appellees' Br. 18 (quoting *Pettus*, 554 F.3d at 297). Amicus, by contrast, contends that "if [a nexus requirement] is to be engrafted onto the statute," then we should require only that prisoners' "claims on the merits . . . be *related* to the allegations of imminent harm." *Pinson* Amicus Br. 41.

We see no need to articulate a precise test for evaluating section 1915(g)'s nexus requirement because, whatever the standard, Gorbey's claims bear no relationship at all to the dangers alleged. His claims neither address the conditions of his confinement nor "aim[] at preventing [the] future harms" he purportedly faced. *Abdul-Akbar*, 239 F.3d at 315. Were Gorbey to prevail and obtain all the relief he requested, that relief would in no way redress the complained-of dangers. The BOP could still assign him a top bunk, his glaucoma would remain untreated, and so on and so forth. Because Gorbey's claims do not seek "to obtain a judicial remedy *for* an imminent danger," *Pettus*, 554 F.3d at 297 (emphasis added), they lack even a minimal nexus to the harms alleged and, accordingly, cannot support Gorbey's IFP request.

14

**IV.**

Pinson is also serving a twenty-year prison term and, like Gorbey, has become a prodigious litigator while incarcerated. Initiating this action in December 2016, she sought leave to proceed IFP under the imminent-danger exception. The district court denied the request, and Pinson challenged the denial via mandamus. On appeal, the clerk of this court ordered Pinson to show cause why she "should not be required to pay the full appellate filing fees." Order, *Pinson v. Department of Justice*, No. 18-5331 (D.C. Cir. June 15, 2017). Pinson responded in July 2017, asserting that she faced imminent danger because she "ha[d] previously cooperated with law enforcement and her cooperation ha[d] unfortunately become public . . . le[ading] to many attempts to kill her." Resp. to Order to Show Cause 1, *Pinson* Appendix (*Pinson* App.) 98. In light of those allegations, we discharged the show cause order, granted mandamus, and directed the district court to allow Pinson to proceed IFP.

Back before the district court, Pinson submitted several filings relevant to this appeal. She first amended her complaint to bring claims against the Department of Justice under the First and Eighth Amendments. In particular, Pinson alleged that in retaliation for her frequent lawsuits, BOP officials, *inter alia,* transferred her to a "remarkably harsher and more dangerous" facility in Tucson and leaked a rape complaint Pinson filed to other inmates. Am. Compl. 2–3, *Pinson* App. 120–21. Pinson also filed three preliminary injunction motions seeking emergency relief on the grounds that BOP officials hindered her access to the courts by, among other things, blocking the email address she used to communicate with her lawyer and excluding her from the prison's law library. The district court denied all three motions, finding that Pinson faced no irreparable harm and was unlikely to succeed on the merits.

Instead of proceeding with her amended complaint, on which the district court has taken no action, Pinson filed this interlocutory appeal on November 9, 2018. Although the district court permitted Pinson to file the appeal IFP, the clerk of this court again issued Pinson an order to show cause why she should not be required to pay the full appellate filing fees. In response, Pinson asserted that "in light of the" district court's order, this court's "order to show cause [wa]s moot." Appellant's Resp. to Show Cause Order 1, *Pinson* App. 186. A motions panel discharged the order and referred Pinson's request to a merits panel. Since the referral, Pinson has submitted several letter motions seeking to supplement the record with documentation of assaults she allegedly suffered at the hands of fellow inmates, all of which purportedly occurred after June 2019.

Out of that procedural tangle, we are left with the question of whether Pinson may bring her interlocutory appeal under the imminent-danger exception. The government argues that the "facts proffered by Pinson do not establish a danger of imminent serious physical injury in November 2018"—when she lodged her notice of appeal—and that her request to proceed under the exception should therefore be denied. *Pinson* Appellees' Br. 40. Once more, we agree.

As explained above, to bring this appeal under the exception, Pinson must show that she faced imminent danger at the time of noticing her appeal. She has failed to do so, as all of her allegations concern incidents that occurred several months before or several months after she took her appeal. The allegations in Pinson's mandamus petition and amended complaint predate her notice of appeal by sixteen and eight months, respectively. *See* Resp. to Order to Show Cause 1, *Pinson* App. 98 (complaining of harm she faced no later than June 2017); Am. Compl. 1–2, *Pinson* App. 119–20 (raising

vague allegations that she faced threats in February 2018). As for the allegations in Pinson's letter motions, they all concern incidents that occurred post-June 2019, more than six months after Pinson noticed her appeal. Mot. for Order to Suppl. R. 1, *Pinson* App. 191. None of those allegations can support Pinson's request to proceed under the imminent-danger exception because "the availability of the . . . exception turns on 'whether the prisoner is under imminent danger of serious physical injury when'" she brings an appeal, "not 'whether [s]he later in fact suffers' (or earlier suffered) such a threat." *Asemani*, 797 F.3d at 1074 (quoting *Pinson*, 761 F.3d at 5).

Relying on *Williams,* amicus contends that "there should be a presumption in favor of the prisoner that imminent-danger conditions found at the district court stage continue at the time of the filing of a related appeal" and that "[t]he presumption applies fully in Pinson's case." *Pinson* Amicus Br. 17. True, in *Williams*, the Ninth Circuit "conclude[d] that a prisoner who was found by the district court to sufficiently allege an imminent danger is entitled to a presumption that the danger continues at the time of the filing of the notice of appeal." 775 F.3d at 1190. But the court also cautioned that for a prisoner-litigant to avail herself of the presumption, she must submit something, like "[a]n affidavit or declaration[,] that alleges an ongoing danger at the time of the filing of the notice of appeal." *Id*. Pinson proffered no such filing: nowhere in her various submissions to this court and the district court does she identify any harm, continuing or otherwise, that she faced at the time of her appeal. Thus, even were we to adopt the Ninth Circuit's presumption, Pinson would not qualify for it.

**V.**

Because the three-strikes rule precludes Pinson from proceeding IFP on appeal, we must address the contention that the rule is unconstitutional as applied to her.

Amicus likens this case to *In re Green*, 669 F.2d 779 (D.C. Cir. 1981) (per curiam), in which we vacated a district-court order that prospectively denied IFP status in all future cases to a particularly prolific prison-litigant. *Id.* at 786. The order, we explained, "erect[ed] a potentially prohibitive financial barrier" that "effectively denie[d] [the prisoner] any and all access to the district court." *Id*. Because "[e]ven a new, nonfrivolous claim submitted in good faith," including one "involving a fundamental constitutional right," "would not be heard if [the prisoner] could not meet the filing fee," we found the order "so burdensome as to deny the litigant meaningful access to the courts." *Id*.

According to amicus, applying the three-strikes rule to this appeal would be equally unconstitutional because it "categorically . . . denie[s] [Pinson] access to the courts . . . in a case in which she [too] seeks to vindicate fundamental rights." *Pinson* Amicus Br. 48. But even assuming that the rule might raise constitutional concerns when it "total[ly] bar[s]" prisoner-litigants from accessing the courts, *Green*, 669 F.2d at 785, Pinson's as-applied challenge fails because she has yet to encounter such a barrier, *see Asemani*, 797 F.3d at 1077 (assuming that the rule "might raise constitutional concerns when a prisoner seeks access to the courts to vindicate certain fundamental rights" but concluding that the prisoner-litigant in that case failed to raise such claims (citing *Thomas v. Holder*, 750 F.3d 899, 909 (D.C. Cir. 2014) (Tatel, J., concurring)).

Where, as here, "'the essence'" of a prisoner-litigant's denial-of-access claim "'is that official action'"—e.g., the

imposition of filing fees—"'is presently denying an opportunity to litigate,'" "[t]he Supreme Court's jurisprudence . . . reveals at least two necessary elements: an arguable underlying claim and present foreclosure of a meaningful opportunity to pursue that claim." *Broudy v. Mather*, 460 F.3d 106, 117, 120–21 (D.C. Cir. 2006) (quoting *Christopher v. Harbury*, 536 U.S. 403, 413 (2002)). The first element requires a nonfrivolous underlying claim "attack[ing] [the prisoner's] sentence[]" or "conditions of . . . confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). The second requires the prisoner to "show that a meaningful opportunity to pursue the[] underlying claim[] was completely foreclosed." *Broudy*, 560 F.3d at 121 (internal quotation marks omitted).

Pinson falters on the second element. Her request to proceed IFP pertains only to her interlocutory appeal challenging the district court's denial of her preliminary-injunction motions. Critically, her amended complaint and the constitutional claims contained therein remain pending before the district court. Thus, Pinson can "still meaningfully press h[er] underlying [constitutional] claims." *Broudy*, 560 F.3d at 121. Although the three-strikes rule limits Pinson's ability to obtain the extraordinary remedy of a preliminary injunction, that limitation does not "total[ly] bar[]" Pinson from bringing her claims. *Green*, 669 F.2d at 785; *cf. In re Sindram*, 498 U.S. 177, 180 (1991) (per curiam) (ordering the clerk to deny a prisoner-litigant IFP status in "all future petitions for extraordinary relief"). Unlike the prisoner-litigant in *Green*, then, Pinson has not yet been "den[ied] . . . any and all access" to the courts. 669 F.2d at 786.

To be clear, we take no position on whether the outcome would be different were the three-strikes rule to prevent Pinson from pursuing her constitutional claims on direct appeal.

Because we confront only Pinson's *interlocutory* appeal, our holding is similarly limited.

## VI.

For the reasons set forth above, we deny Gorbey's and Pinson's requests to proceed IFP on appeal. If the prisoners wish to proceed with their appeals, they have thirty days from the date of this opinion to pay the full filing fees. *Asemani*, 797 F.3d at 1078. But they may also elect not to proceed with their appeals, in which case the appeals will be dismissed and no fees will be collected. *See id*.

*So ordered*.